UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION at LAFAYETTE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| TERRY ALBERT FOUST, ) | |
| ) | |
| Debtor. ) | Appeal from the U.S. Bankruptcy Court |
| ) | Northern District of Indiana |
| ************************************ ) | |
| ) | |
| BETTY OVERSTREET, ) | |
| ) | |
| Appellant/Creditor, ) | |
| ) | |
| v. ) | No. 4:21 CV 50 PPS |
| ) | |
| TERRY ALBERT FOUST, ) | |
| ) | |
| Appellee/Debtor. ) | |

## OPINION AND ORDER

Terry Foust sought bankruptcy protection under Chapter 13 of the bankruptcy code, and Betty Overstreet tried to file a proof of claim as one of Mr. Foust's creditors. The bankruptcy judge held that Overstreet was at least one day late in filing her proof of claim, and he therefore disallowed the claim as untimely. Overstreet now appeals that decision. Because of the importance of maintaining strict filing deadlines in the processing of Chapter 13 petitions, even claims that are filed one day late must be disallowed. Neither equitable tolling nor excusable neglect applies in this area of the law because a more flexible approach could lead to chaos in the administration of Chapter 13 bankruptcies which are often complex pieces of litigation. For this reason, and others discussed below, the holding of the bankruptcy court disallowing the claim will be AFFIRMED.

**Factual Background**

On November 18, 2020, Terry Foust filed a voluntary Chapter 13 Bankruptcy petition in the Hammond Division at Lafayette. [DE 1-2 at 7.] In the years leading up to the bankruptcy petition, Foust and Betty Overstreet had been enmeshed in litigation in Illinois, and Overstreet was therefore a potential creditor in Foust's bankruptcy. As a result, Overstreet hired counsel in Indiana with the intention of filing a proof of claim in the bankruptcy case. The same day as the Chapter 13 petition was filed, the bankruptcy court set a claims deadline for January 27, 2021. *Id.* In the bankruptcy world, that is a hard deadline. As discussed below, it is not subject to excusable neglect or equitable tolling.

On the day the proof of claim was due with the court (January 27, 2021), Overstreet's counsel "requested for privilege for electronic filing" with the bankruptcy court. [DE 3-1 at 23.] Evidently, he had never practiced in that court and therefore did not have access to file electronically at that time. *Id*. For reasons that are not entirely clear, the privileges were not immediately granted to Overstreet's counsel. *Id*. There is no evidence in the record that Overstreet's counsel sought help with his ECF application or that he attempted to travel to the courthouse in Lafayette to manually file the proof of claim. Instead, counsel sought to meet the deadline another way–through certified mail. *Id*. Using a postage machine in his office, counsel paid the postage that was due and the machine stamped the date of "January 27, 2021" on the envelope, and he then placed it in the outgoing mail in his office. [DE 3-1 at 41-42.] But the envelope containing the proof of claim wasn't postmarked by the U.S. Postal Service until the following day – January 28th. [DE 3–1 at 37.] The proof of claim actually arrived at the Clerk's

Office in Lafayette on February 1, 2021, and that is the date it was file-stamped by the Clerk. [DE 3-1 at 65.]

As COVID-19 ravaged the nation throughout 2020 and into 2021, courts around the country scrambled to deal with the effects of the pandemic on litigation. Many courts, including our own, issued general orders to keep litigation moving forward as expeditiously, efficiently and safely as possible. Overstreet claims that a couple of General Orders issued by this Court are especially important to this case. [DE 3 at 5.] First, he points me to General Order No. 2020-20 titled *In Re: Court Operations Under the Exigent Circumstances Created by COVID-19,* which states that "[f]or those persons without access to the Court's electronic filing system, all filings for the District Court and Bankruptcy Court matters must be submitted via United States Mail to the relevant divisional mailing address." N.D.Ind. General Order No. 2020-20 at 4. But this order was only issued because at that time "the divisional locations of the United States District Court for the Northern District of Indiana, including the United States Bankruptcy Court . . . , REMAIN CLOSED TO THE PUBLIC until **July 6, 2020 . . .**" *Id*. (All caps and emphasis in the original). *Id.* at 3-4. This General Order, by its very terms, expired on July 6, 2020, and, in any event, was superseded at least six more times prior to the date Overstreet's proof of claim was due on January 27, 2021, and none of those subsequent General Orders made any reference to the Bankruptcy Court. *See* N.D.Ind. General Orders Nos. 2020-29; 2020-32; 2020-35; 2020-39; 2021-03; 2021-04.

The second order that Overstreet points me to is General Order No. 2021-04 titled *In Re: Closing of Court Facilities Under the Exigent Circumstances Created by COVID-19*, which states that the Clerk's Office is open during normal business hours only by telephone and email and otherwise closed to the public . . . If a filing is mailed by a non-prisoner, the filing date shall

3

be deemed to be the postmark date.. . ." *Id.*[1] This General Order, by its clear terms, made no reference to the Bankruptcy Court, its operations or its Clerk's Office. But according to Overstreet, this General Order created a "mail box rule in the U.S. District Court" for the filing of materials with the Court. [DE 3 at 7.] And since the Bankruptcy Court is part of the U.S. District Court of the Northern District of Indiana, Overstreet claims that this General Order essentially supersedes the Federal Rules of Bankruptcy Procedure and allows a proof of claim to be received by the Court after the deadline so long as it is postmarked before it. [DE 3 at 7.]

Ruling from the bench, Chief Judge Grant disallowed Overstreet's proof of claim finding that it was tardy. [DE 3-1 at 44-47.] At the outset of his ruling, Judge Grant accepted as fact that Overstreet's Counsel couldn't get registered as an ECF filer, despite the fact that he waited until the last day to attempt to do so. *Id*. at 44-45. But in any event, even assuming counsel couldn't file the proof of claim electronically, Judge Grant held that mailing on the deadline was not a timely substitute, because the Bankruptcy Court has always operated on the principle that "filing" means receipt by the court. *Id.* at 45. Judge Grant found that the district court's General Orders relating to the closing of Court facilities due to COVID-19 had no bearing on the case because they did not explicitly reference the Bankruptcy Court. *Id*. Judge Grant noted that the Bankruptcy Clerk's Office remained open throughout the pandemic and stood ready and able to accept paper filings. *Id*. at 44. What's more, as Judge Grant noted, even for "after business hours' filings, the Bankruptcy Court . . . has an emergency filing line." [DE 3-1 at 44.]

---

[1] Overstreet calls this General Order No. "2021-22", but I cannot locate a General Order with that cause number affixed to it. [DE 3 at 7.] I presume she means to say "General Order No. 2021-04" inasmuch as that was the General Order relating to access to the Courthouse that was in place at the time of her filing of the proof of claim. General Order No. 2021-04 also contains the language Overstreet quotes and the expiration date she refers to. [*Id.*]

Therefore, Judge Grant found that the law was clear that a proof of claim had to be "received by the Court" in order to be timely filed, and since the proof of claim in this case wasn't received until February 1, it was five days late. *Id.* at 45.

Finally, Judge Grant found that even if the district court's General Order somehow were to trump the Federal Rules of Bankruptcy Procedure which set a hard deadline for the filing of a proof of claim, Overstreet's filing was still tardy. *Id*. at 45-46. That is because it was not postmarked by the U.S. Postal Service until January 28th thus making it one day late even under Overstreet's conception of things. *Id*. The proof of claim was therefore disallowed, and this appeal followed.

**Discussion**

Appeals from an order of a bankruptcy court are reviewed by district courts for clear error if they relate to factual matters, and *de novo* if they are legal conclusions. *In Re Kempff*, 847 F.3d 444, 448 (7th Cir. 2017).

In a Chapter 13 case, Federal Rule of Bankruptcy Procedure 3002(a) states that a "creditor must file a proof of claim . . . to be allowed." And claims must be filed with the Clerk of Court where the case is pending. Fed.R.Bankr.P. 3002(b). The filing must be received by the Clerk, not just put in the mail. *In re: Sunland, Inc.*, 536 B.R. 920, 928 (Bankr.D.N.M. 2015) (quoting *In re Nimz*, 505 F.2d 177, 179 (7th Cir. 1974) ("It is true that mailing alone does not constitute filing, but that filing requires delivery and receipt by the proper party.") (citing *United States v. Lombardo*, 241 U.S. 73 (1916)); *In re Mangum*, 2006 WL 3626775, at *2 (Bankr.N.D.Ill. Dec. 7, 2006) ("Filing occurs when the document is placed in the possession of the clerk"). As one court recently put it. "[A]pplying the mailbox presumption to the mailing of a proof of claim would complicate, bring uncertainty, and cause delay to the bankruptcy claims

process." *In re N. Carolina New Sch. Inc.*, 2020 WL 6891915, at *3 (Bankr.M.D.N.C. Oct. 26, 2020). Thus, service of documents on opposing parties is not to be confused with the *filing* of documents with the Clerk. Reliance on the mails is entirely proper for the former, but not for the latter. *Chrysler Motors Corp. v. Schneiderman*, 940 F.2d 911, 914 (3rd Cir. 1991).

The filing deadlines for proofs of claim in Chapter 13 bankruptcy cases are as rigid as a schoolmarm. Why such a mechanical approach is necessary is a question that was effectively addressed by the Amicus in this case, the Standing Chapter 13 Trustee, Ms. Debra Miller. [DE 7.] Unlike run-of-the-mill litigation, Chapter 13 proceedings have a lot of moving parts. There is both a legal and burdensome administrative component to processing a Chapter 13 petition. As Trustee Miller explained, "Because of the high volume of pleadings in any given Chapter 13 bankruptcy, there is a need for bright-line rules to ensure that the system works without giving preference to any class of creditors while minimizing the costs for litigants who are by definition, not solvent." *Id*. at 6. In other words, it's binary; your filing is either timely, or it is not. To hold otherwise would be to introduce substantial uncertainty into an already complicated endeavor. *In re Griffis*, 31 B.R. 279, 281 (Bankr.D.Vt. 1983).

For its part, the Seventh Circuit has laid down a clear rule: "A debtor may object– and a court *must* disallow the claim– if the creditor's proof of claim is not timely filed." *In re Pajian*, 785 F.3d 1161, 1163 (7th Cir. 2015)(emphasis added). A more flabby approach would "wreak havoc on the ability of the debtor and bankruptcy court to assemble and approve an effective plan[.]" *Id.* at 1164. What I take from this is there is no room for ambiguity; a proof of claim filed one day late, is still just plain late. And the concept of excusable neglect does not apply in this situation. The Seventh Circuit put that to rest over a decade ago when it found, given the reasons discussed above, that excusable neglect relative to objections to late-filed claims is only

6

available in Chapter 11 cases. *In re marchFIRST, Inc.* 573 F.3d 414, 417, n.1 (7th Cir. 2009) (*citing In re De Vries Grain & Fertilizer, Inc.*, 12 F.3d 101, 105 (7th Cir. 1993)).

All of which brings us back to Overstreet's proof of claim. Waiting to do things at the last moment can cause problems. It fails to take into account the risk that last minute hiccups might derail things. This case proves that point. For starters, it is entirely unclear why counsel waited until the last day to attempt to register as an ECF user in this district. Electronic filing is now the norm in federal court and has been that way for nearly two decades. *See* F.R.Bankr.P. 5005(a)(2)(A) and Advisory Committee Notes to 2018 Amendments. Counsel surely knew the inflexibility of the deadline for filing a proof of claim. What's more, when counsel found out that his registration request wasn't tended to immediately by the Clerk of Court, nothing prevented him from seeking assistance from the Clerk of Court via the emergency helpline that Judge Grant referenced, or simply driving to the Bankruptcy Court in Lafayette and filing the proof of claim in the Clerk's Office. [DE 3-1 at 44.]

Instead, counsel now relies on the *district court's* General Order – an Order issued due to COVID-19 concerns – which does not even specifically reference the Bankruptcy Court. That General Order says that non-prisoners may submit filings via mail and they are deemed filed on the date they are postmarked. *See* N.D. Ind. General Order No. 2021-04. To accept Overstreet's position, one would have to believe that the District Court's General Order somehow superseded the Federal Rules of Bankruptcy Procedure, and in particular Rule 3002(a) and (b) which govern the timing and filing of proofs of claim. That strikes me as a stretch. And at least one judge has agreed that a district court's general order issued due to COVID-19 concerns did not supersede the Federal Rules of Bankruptcy Procedure. *See In re Somogye*, 2020 WL 4810805, at *13 (Bankr. N.D. Ohio July 8, 2020).

7

But let's look past all this and assume that the General Order somehow altered the Federal Rules of Bankruptcy Procedure by allowing for a filing of the proof of claim via the mail and that the filing date is the postmark date.  Even then, I am at a loss to see how that gets Overstreet anywhere.  As Judge Grant pointed out, the postmark date is the date the U.S. Postal Service receives and stamps the letter.  It is not the date that counsel's postage machine stamps it.  While I take at face value that counsel did not purposely misdate the postage meter inside his office, to allow the filing date to be subject to the influence of the person doing the filing could well lead to mischief. The more objective approach is to use the date the *Postal Service* affixes to the envelope.  That is both sensible and the norm. As the Seventh Circuit has noted, in the tax world, when a "petition bears both a private and U.S.P.S. Postmarks, the U.S.P.S. postmark trumps the private meter postmark." *King v. C.I.R.,* 207 Fed.Appx. 681, 682 (7th Cir. 2006); *Tilden v. Commissioner of Internal Revenue*, 846 F.3d 882, 885-87 (7th Cir. 2017) (when there are competing postmarks, a private postmark versus the Postal Service's, the Postal Service postmark governs). In this case, where the envelope reflects both a private postmark (January 27) and a Postal Service postmark (January 28), the Postal Service's postmark governs. [DE 3-1 at 37.]  And that makes Overstreet's proof of claim a day late.

In sum, a lot of things get blamed on COVID-19 these days. Overstreet's missed deadline can't be one of them. Giving her the benefit of every doubt still leads us to the same conclusion. In other words, even assuming that her reading of the district court's General Orders was proper, and I don't think it was, her proof of claim was still late.  Overstreet's proof of claim was postmarked one day past the filing deadline and was received by the Bankruptcy Court five days late.  It was untimely and the Bankruptcy Court was correct in sustaining the debtor's objection and denying Overstreet's claim.

ACCORDINGLY:

The judgment of the bankruptcy court is therefore AFFIRMED.

**SO ORDERED.**

ENTERED:  November 30, 2021.

                                            /s/ Philip P. Simon
                                       PHILIP P. SIMON, JUDGE
                                       UNITED STATES DISTRICT COURT